TERRY v CITY OF DETROIT

Docket Nos. 186535, 195210. Submitted February 18, 1997, at Detroit.
    Decided November 18, 1997, at 9:00 A.M. Leave to appeal sought.
    Leave to Appeal Sought

Constance Terry and Emmet and Helen Burkes, as coconservators of
    the estate of LaTonya Burkes, brought an action in the Wayne Cir-
    cuit Court against the City of Detroit, General Motors Corporation,
    and others, seeking damages for injuries sustained when a stolen
    vehicle being pursued by Detroit police officers collided with a
    vehicle containing Constance and LaTonya. The fleeing vehicle,
    which was owned by General Motors, had been stolen from a
    guarded and secured garage owned by General Motors. The vehicle
    had been assigned to a General Motors employee and had been
    parked in the spot assigned to the employee. The keys had been
    left in the vehicle to facilitate its washing and refueling, allegedly
    pursuant to instructions given to the employee. The court, Michael
    F. Sapala, J., denied the city's motion for summary disposition that
    was based on governmental immunity and denied, in part, General
    Motors' motion for summary disposition, finding that General
    Motors owed a duty to Constance and LaTonya. General Motors
    (Docket No. 186535) and the City of Detroit (Docket No. 195210)
    appealed by leave granted from the trial court's orders. The appeals
    were consolidated.

The Court of Appeals *held*:

1. The court erred as a matter of law in concluding that General
Motors owed a duty to protect members of the general public from
harm resulting from the theft of the vehicle. The order denying
summary disposition for General Motors must be reversed and the
matter must be remanded for entry of an order of summary dispo-
sition for General Motors.

2. General Motors' practice of leaving keys in employee vehicles
does not create the kind of unreasonable risk of harm to third per-
sons that would warrant the imposition of a duty under Michigan's
common law.

3. The trial court properly denied the city's motion for summary
disposition. The order denying the city's motion for summary dis-
position must be affirmed.

4. Reasonable minds could disagree with regard to whether the police officers operated their patrol car negligently. The issue of proximate cause must be submitted to the trier of fact.

Affirmed in part, reversed in part, and remanded.

1. NEGLIGENCE — DUTY.

Variables that a court in a negligence action looks to in determining whether a duty exists include the foreseeability of the harm, the degree of certainty of injury, the existence of a relationship between the parties involved, the closeness of the connection between the conduct and the injury, the moral blame attached to the conduct, the policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach; the mere fact that an event may be foreseeable is insufficient to impose a duty on a defendant.

2. AUTOMOBILES — EMERGENCY VEHICLES — TRAFFIC REGULATIONS.

Although authorized emergency vehicles are excused by statute from obeying most of the rules of the road, they must be driven with due regard for the safety of others (MCL 257.603, 257.632; MSA 9.2303, 9.2332).

3. AUTOMOBILES — POLICE PURSUIT — NEGLIGENCE.

Police vehicles pursuing a fleeing vehicle must be driven with due regard for the safety of others; the existence of an emergency is but one factor to be considered in evaluating the reasonableness of a driver's conduct; other factors to be considered are the speed of the pursuit, the area of the pursuit, weather and road conditions, the presence of pedestrians and other traffic, the presence or absence of audible and visible warnings, and the reason the officers were pursuing the fleeing vehicle.

4. GOVERNMENTAL IMMUNITY — SUMMARY DISPOSITION — AUTOMOBILES — POLICE PURSUIT.

Summary disposition of an action alleging damages resulting from the negligent operation of a police vehicle in pursuit of a fleeing vehicle is properly denied where reasonable minds could disagree about whether the officers involved operated their vehicle negligently; government immunity does not apply in cases involving the negligent operation of a government-owned vehicle (MCL 691.1405; MSA 3.996[105]).

*David A. Robinson, Cornelius Pitts* and *Elaine Carlis,* for the plaintiffs.

*William J. Liedel, P.C.* (by *William J. Liedel* and *Patricia M. Jason*), for the City of Detroit.

*Feeney Kellett Wienner & Bush* (by *S. Thomas Wienner, Peter M. Kellett,* and *David N. Goltz*), for General Motors Corporation.

Before: YOUNG, P.J., and GRIBBS and S. J. LATREILLE*, JJ.

YOUNG, P.J. In these consolidated appeals, defendant General Motors Corporation (GM) in Docket No. 186535 appeals by leave granted the circuit court order denying in part its motion for summary disposition in this negligence action.[1] Defendant City of Detroit in Docket No. 195210 appeals by leave granted the circuit court order denying its motion for summary disposition. We affirm in part, reverse in part, and remand for further proceedings.

I

On October 26, 1992, at approximately 8:15 P.M., plaintiffs LaTanya Burkes and Constance Terry were driving through the intersection at Puritan and Freeland in Detroit when their vehicle was struck by a stolen Cadillac Seville being driven at a high rate of speed by defendant Charles Blunt. At the time of the crash, defendant Blunt was being pursued by Detroit Police Officers Darrell Patterson and Carl Webster in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The trial court did grant summary disposition to GM with regard to plaintiffs' claims that GM (1) expressly or impliedly consented to use of the stolen vehicle, (2) negligently entrusted defendants Charles Blunt and Curtis Thompson with the stolen Cadillac, and (3) violated statutes or Detroit city ordinances. Those determinations are not at issue in this appeal.

a fully marked Detroit Police car. The officers were attempting to cite defendant Blunt for running a red light, although Officer Patterson recognized defendant Blunt from three previous incidents in which Blunt was seen driving other Cadillacs, one of which also had been stolen. The officers pursued the vehicle at speeds of at least fifty to sixty miles an hour through a residential area where the speed limit was twenty-five miles an hour. The Cadillac reached estimated speeds of seventy to eighty miles an hour. The pursuit continued until Blunt disregarded a red traffic light and struck plaintiffs' vehicle.

Blunt had stolen the Cadillac at approximately 2:45 P.M. from a guarded and secured Cadillac Motor Car Division garage located on Clark Street in Detroit. The vehicle had been assigned to a GM employee and was parked in his assigned parking space in the basement of the garage. The employee testified in his deposition that he routinely left the keys in the unlocked vehicle to facilitate washing and refueling and that he had received oral instructions on two or three occasions to leave the keys in the ignition in case of an emergency. It is undisputed that seven other GM vehicles had been stolen from the Clark Street facility during the two months preceding the instant theft, albeit from the guarded and secured executive garage located across the street.[2]

Plaintiffs filed the instant lawsuit alleging, among other things, that GM owed and breached duties to take reasonable measures to prevent the theft of the vehicle. Plaintiffs also alleged that the officers' con-

---

[2] A review of Cadillac Motor Car Division theft reports indicates that, in at least two of the seven thefts, the keys were left in the vehicles.

duct constituted "gross negligence, deliberate indifference, willful and wanton conduct, callous reckless, wanton negligence and deliberate and intentional disregard of their operational duties as police officers." Plaintiffs asserted that the City of Detroit was vicariously liable for the conduct of the officers and that it owed and breached duties to properly "train, retain, discipline and/or supervise [the officers] in the proper execution of their law enforcement assignments."

GM filed a motion for summary disposition under MCR 2.116(C)(8) and (10), arguing that it did not owe a duty to plaintiffs because (1) no special relationship existed, (2) the risk of harm was not unreasonable under the circumstances, and (3) strong policy reasons existed for not imposing a duty under the circumstances. GM also argued that there was no genuine issue of material fact concerning whether GM's alleged negligence was the proximate cause of plaintiffs' injuries. The City of Detroit moved for summary disposition under MCR 2.116(C)(7) and (10). It argued that it was entitled to governmental immunity because (1) there was no evidence that the officers operated their vehicle negligently and (2) the officers' conduct was not the proximate cause of plaintiffs' injuries.

The trial court denied GM's motion, determining that GM owed plaintiffs a duty. Relying on *Buczkowski v McKay*, 441 Mich 96; 490 NW2d 330 (1992), and *Thomas v Eppinga*, 179 Mich App 366; 445 NW2d 234 (1989), the court reasoned that GM never intended that a customer operate the vehicle; consequently, no economic interest was furthered by the theft. The court held that it was foreseeable that a thief would attempt to elude the police, and that GM could have

easily prevented the problem by changing its policy about leaving keys in the ignition. The court further held that there were special circumstances warranting the imposition of a duty, namely, the large number of previous thefts and the small burden in remedying the problem. Therefore, the trial court stated that summary disposition should be denied.

The trial court also denied the City of Detroit's motion for summary disposition sought on the basis of governmental immunity. The court reasoned as follows:

> [T]here is ample evidence to go to a jury on the issue of negligence.
>
> The nature of the violation, the time of night, the possible speed here, about the eighty-four miles an hour, the driving in a residential area, the expert testimony with regard to the obligation of an officer to consider discontinuing the chase under these circumstances, all of these are facts that should clearly go to a jury.

We review the trial court's denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994). For the reasons stated later, we conclude that GM did not owe a duty of care to plaintiffs and that it was therefore entitled to summary disposition as a matter of law. However, we affirm the trial court's decision denying the City of Detroit's motion for summary disposition.

II

GM argues in Docket No. 186535 that the trial court erred in concluding as a matter of law that it owed a

duty to plaintiffs. Under the circumstances of this case, we agree.

In order to establish a prima facie case of negligence, the plaintiff must prove: "(1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages." *Baker v Arbor Drugs, Inc,* 215 Mich App 198, 203; 544 NW2d 727 (1996). Duty is an obligation that the defendant has to the plaintiff to avoid negligent conduct. *Id.* Whether a duty exists is a question of law for the court. *Simko v Blake,* 448 Mich 648, 655; 532 NW2d 842 (1995). If a court determines as a matter of law that a defendant owed no duty to a plaintiff, summary disposition is appropriate under MCR 2.116(C)(8). *Dykema v Gus Macker Enterprises, Inc* 196 Mich App 6, 9; 492 NW2d 472 (1992).

In determining whether a duty exists, courts look to different variables, including the (1) foreseeability of the harm, (2) degree of certainty of injury, (3) existence of a relationship between the parties involved, (4) closeness of connection between the conduct and injury, (5) moral blame attached to the conduct, (6) policy of preventing future harm, and (7) the burdens and consequences of imposing a duty and the resulting liability for breach. *Buczkowski, supra* at 101, citing Prosser & Keeton, Torts (5th ed), § 53, p 359, n 24; *Baker, supra.* The mere fact that an event may be foreseeable is insufficient to impose a duty upon the defendant. *Buczkowski, supra* at 101. As the Court in *Buczkowski* explained:

Duty is actually a " 'question of whether the defendant is under any obligation for the benefit of the particular plain-

tiff' and concerns 'the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other.' " " 'Duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." [*Id.* at 100-101 (citations omitted).]

Thus, whether GM had a duty to protect plaintiffs "depends on the relationship between the parties, the nature and foreseeability of the risk, and any other considerations that may be relevant on the issue." *Id.* at 103.

At its core, the issue presented by plaintiffs' negligence claim against GM is whether, as a matter of policy, this Court should impose a duty on GM to protect remote and unknown third persons from the criminal acts of others. Plaintiffs cite *Thomas, supra,* for the proposition that " '[s]pecial circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons.' " *Thomas,* at 375, quoting *Hergenrether v East,* 61 Cal 2d 440, 444; 39 Cal Rptr 4; 393 P2d 164 (1964).

In *Thomas* at 368, the defendant left her car unlocked with the keys under the driver's side floor mat. The defendant was the only person who knew where the keys were, and no one else had keys to the vehicle. *Id.* The vehicle was stolen and was involved in a hit-and-run accident. *Id.* Relying on *Hergenrether, supra,* the *Thomas* Court stated that "each case had to be considered on its own facts to determine whether the foreseeable risk of harm was unreasonable so that the driver or owner of the vehicle had a duty to the plaintiff to refrain from subjecting him to

such risk." *Id.* at 375. The Court declined to impose a duty on the defendant under the circumstances of that case, reasoning as follows:

> Plaintiff does not allege any facts outside of defendant's hiding her keys in an unlocked vehicle to support her claim that defendant was aware or should have been aware of circumstances that increased the probability that her car would be stolen and that the thief was likely to operate it in a negligent manner, thereby causing injury or damage to a third party. [*Id.* at 377.]

In effect, the *Thomas* "special circumstances" rule seeks to impose a duty based solely upon foreseeability of the risk.[3] Although this is one factor to be considered, "other considerations may be, and usually are, more important." *Buczkowski, supra* at 101. " '[T]he mere fact that an event may be foreseeable does not impose a duty upon the defendant to take some kind of action accordingly.' " *Id.*, quoting *Samson v Saginaw Professional Bldg, Inc*, 393 Mich 393, 406; 224 NW2d 843 (1975). Thus, while it *may* be foreseeable to a vehicle owner that, if he leaves his keys in the ignition, the vehicle might be stolen and driven recklessly or negligently, we believe that this fact alone is insufficient to create liability in this type of case. Therefore, consistent with the approach taken by the Supreme Court in *Buczkowski* for determining whether a legal duty exists, we hold that the

---

[3] It appears that the *Thomas* Court confused the separate issues of (1) duty and (2) the specific standard of care required in negligence cases, i.e., reasonable conduct. See *Buczkowski, supra* at 100. There is a principled difference between a specific legal duty that a particular defendant owes to a particular plaintiff and the general "duty" to refrain from particular conduct. *Id.*; see also *Holloway v Martin Oil Service, Inc*, 79 Mich App 475, 480, n 4; 262 NW2d 858 (1977).

narrow foreseeability-based "special circumstances" rule announced in *Thomas* is no longer viable.[4]

Applying the factors enunciated in *Buczkowski* to the case before us, we conclude that GM did not have a duty to protect plaintiffs from the harm that resulted from defendant Blunt's theft of GM's vehicle and subsequent reckless driving. Plaintiffs stress foreseeability based on GM's alleged policy of leaving keys in unlocked vehicles and its knowledge of prior thefts. However, we find that the connection between GM's conduct and plaintiffs' injuries was simply too attenuated to impose a duty and resulting liability for breach of the duty on GM. Rather, the accident was more closely connected to defendant Blunt's criminal conduct in stealing GM's vehicle and driving recklessly.

In addition and in context, we do not believe that GM's conduct is particularly blameworthy, and we conclude that the nexus between that conduct and plaintiffs' ultimate injury is too attenuated when assessed under the *Buczkowski* analysis. To shift responsibility for plaintiffs' injuries to GM for its failure to prevent the theft of its vehicles from a guarded and secured parking garage is a step we are not willing to take. In sum, we simply do not find that GM's practice of leaving keys in employee automobiles creates the kind of unreasonable risk of harm to third persons such as plaintiffs that would warrant the imposition of a duty under this state's common law. To hold otherwise would, in effect, make parties like GM insurers against

---

[4] Plaintiffs also cite the Supreme Court's decision in *Davis v Thornton*, 384 Mich 138; 180 NW2d 11 (1970), and this Court's decision in *Martin v Fowler*, 36 Mich App 725; 194 NW2d 524 (1971). In both cases it was held that the question whether the defendant owed a duty was one of foreseeability for the jury to determine. See *Davis* at 144-145; *Martin* at 729. Plaintiffs' reliance is unavailing in light of *Buczkowski*.

the criminal misconduct of others. We decline to impose such liability and leave it to the Legislature to undertake such a step if it deems it wise to do so. Consequently, we conclude that the trial court erred in denying GM's motion for summary disposition with regard to plaintiffs' negligence claim. In light of our disposition of this issue, we need not address GM's claim that its conduct was not a proximate cause of plaintiffs' injuries.

III

The City of Detroit argues in Docket No. 195210 that it was entitled to governmental immunity as a matter of law because the officers were not negligent in operating their vehicle and therefore, the trial court should have granted its motion for summary disposition pursuant to MCR 2.116(C)(7).[5] We disagree.

In deciding a motion for summary disposition based on governmental immunity, a court must consider all documentary evidence submitted by the parties. *Wade v Dep't of Corrections*, 439 Mich 158, 162; 483 NW2d 26 (1992). All well-pleaded allegations are accepted as true and construed most favorably to the nonmoving party in determining whether the defendant is entitled to judgment as a matter of law. *Id.* at 162-163; *Summers v Detroit*, 206 Mich App 46, 48; 520 NW2d 356 (1994). To defeat the motion for summary disposition, the plaintiff must allege facts giving rise to an exception to governmental immunity. *Wade,*

---

[5] In a single order, the trial court granted summary disposition to the individual officers on the basis that their conduct did not constitute gross negligence under MCL 691.1407(2); MSA 3.996(107)(2). Plaintiffs have not appealed that decision.

*supra* at 163; *Vargo v Sauer*, 215 Mich App 389, 398; 547 NW2d 40 (1996).

MCL 691.1405; MSA 3.996(105) provides an exception to the general rule of governmental immunity in cases involving the negligent operation of a government-owned vehicle by an officer of a governmental agency:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

While authorized emergency vehicles are excused by statute from obeying most of the rules of the road, MCL 257.603; MSA 9.2303, MCL 257.632; MSA 9.2332, they must be driven with due regard for the safety of others. *Fiser v Ann Arbor*, 417 Mich 461; 339 NW2d 413 (1983). In *Fiser*, the Supreme Court provided several factors to be considered in determining whether a pursuing police officer's actions were reasonable, including "speed of pursuit, the area of pursuit, weather and road conditions, the presence of pedestrians and other traffic, the presence or absence of audible and visible warnings, and the reason the officers were pursuing the fleeing vehicle." *Id.* at 472.

In this case, the record reflects that the pursuing officers reached speeds of at least sixty miles an hour in a residential area where the speed limit was twenty-five miles an hour. Vehicles were parked on both sides of the street. The police initiated the pursuit in an attempt to cite the driver of the Cadillac for running a red light, and, although the officers, on the

basis of their prior contacts with Blunt, suspected that the vehicle may have been stolen, a reasonable person could find that this situation did not constitute an emergency. See *id.* at 472. At the beginning of the pursuit, the police made a U-turn and "sped up" from thirty-five miles an hour to try to "catch up" to the fleeing vehicle, which was traveling at an estimated fifty miles an hour. However, the officers did not activate their vehicle's emergency lights and siren until the Cadillac had already driven on the wrong side of the road, made a left turn, and accelerated to a speed of approximately seventy to eighty miles an hour in an effort to elude the officers. Plaintiffs' expert, Michigan State Police Sergeant Douglas Wright, testified that there was "no use turning the light and siren on" at that point, and that a speed of "60ish" was "too fast for those conditions" and an "improper operation of the motor vehicle." We conclude that reasonable minds could disagree about whether the officers negligently operated their patrol car. Thus, the City of Detroit was not entitled to summary disposition based on governmental immunity. *Johnson v Wayne Co,* 213 Mich App 143, 159; 540 NW2d 66 (1995).

IV

The City of Detroit also argues that the trial court should have granted its motion for summary disposition because the officers' conduct was not a proximate cause of plaintiffs' injuries. It bases this argument solely on Sergeant Wright's testimony that "when you terminate a pursuit, the fleeing vehicle will continue at high speeds for a few blocks yet." We find the City of Detroit's claim unpersuasive.

Where reasonable minds could differ regarding the proximate cause of a plaintiff's injury, the question should be determined by the factfinder. *Singerman v Municipal Service Bureau, Inc,* 211 Mich App 678, 686; 536 NW2d 547 (1995). When multiple factors contribute to an injury, a defendant's conduct must be a substantial factor in causing the injury to impose liability. *Poe v Detroit,* 179 Mich App 564, 576; 446 NW2d 523 (1989). In *Fiser, supra* at 475, the Court held that the excessive speed of a fleeing vehicle "could be said to have resulted from the fact that [the driver] was being pursued by the police and that it was this high speed which caused him to lose control of the car." *Id.* As in *Fiser,* we conclude that the issue of proximate cause in this case must be submitted to the trier of fact. *Id.* Thus, the trial court properly denied the City of Detroit's motion for summary disposition.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

S. J. LATREILLE, J., concurred.

GRIBBS, J. I concur in the result only.